## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHELAGH PAYNE | ) | Case No. 1:17-cv-297 |
| 47156 Kentwell Place | ) | |
| Sterling, VA 20165 | ) | |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| THE BRITISH EMBASSY, | ) | |
| WASHINGTON, D.C. | ) | |
| 3100 Massachusetts Ave NW | ) | |
| Washington, D.C. 20008 | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW** Plaintiff Shelagh Payne, by and through her undersigned counsel, and complains of Defendant British Embassy Washington, as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages for age discrimination and discrimination based on Plaintiff's association with a person with a disability under the District of Columbia ("DC") Human Rights Act of 1977, D.C. Code §§ 1401 *et seq.* ("DCHRA"), and violations of Plaintiff's rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), and the DC Family and Medical Leave Act, D.C. Code §§ 32-401 *et seq.* ("DCFMLA").

## THE PARTIES

2. Plaintiff Shelagh Payne resides in Potomac Falls, Virginia.

3. During the relevant time period, Plaintiff was an eligible employee entitled to the protections

of the FMLA and the DCFMLA, and an employee entitled to the protections of the DCHRA. Specifically, she was employed by Defendant for more than 12 months prior to the date she requested leave, and she had worked at least 1,250 hours during the preceding 12-month period. Further, Plaintiff worked at Defendant's worksite with 50 or more other employees.

4. Defendant British Embassy Washington is located at 3100 Massachusetts Ave NW, Washington, DC 20006.

5. During the relevant time period, Defendant was an employer subject to the requirements of the FMLA, the DCFMLA, and the DCHRA.

<u>VENUE AND JURISDICTION</u>

6. Pursuant to 29 U.S.C. § 2617(a), 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. § 1391(b) his Court has subject matter and supplemental jurisdiction over the claims asserted herein, and venue is proper because Defendant formerly employed Plaintiff here, and the alleged unlawful acts took place in DC.

7. Defendant does not enjoy sovereign immunity from the claims in this Complaint. Defendant explicitly waived immunity through its publicized recruitment statement that: "Staff recruited locally by the British Embassy are subject to Terms and Conditions of Service according to local US employment law."

8. Defendant also implicitly waived immunity through its employee handbook, in which Defendant agreed to act "in accordance with the Family and Medical Leave Act of 1993 ("FMLA") and the District of Columbia Family and Medical Leave law."

9. Additionally, and pursuant to the commercial-activities exception to the Foreign Services Immunities Act, Defendant is liable for the claims herein because Plaintiff's duties were clerical and did not involve governmental decision making.

## EXHAUSTION OF REMEDIES

10. On August 5, 2015, Plaintiff filed a complaint with the DC Office of Human Rights ("OHR"), alleging discrimination on the bases of age, disability, family responsibilities, and retaliation. The complaint was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

11. On September 8, 2016, OHR dismissed Plaintiff's complaint for lack of jurisdiction.

12. The EEOC issued Plaintiff the Dismissal and Notice of Right to Sue letter, on or about November 18, 2016.

13. This Complaint is filed within 90 days of Plaintiff's receipt of the EEOC Dismissal and Notice of Right to Sue.

## STATEMENT OF FACTS

14. Plaintiff began working for Defendant in June 1981.

15. During the relevant time period, Plaintiff's title was Trade FMS Finance Officer, and she was 51 years old.

16. Defendant was aware of Plaintiff's age based on her physical appearance and because Plaintiff's date of birth was included on Defendant's personnel documents.

### *Plaintiff performed clerical job duties.*

17. As a Trade FMS Finance Officer, Plaintiff performed clerical duties, such as serving as a control account operator on purchasing contracts between the United Kingdom and the U.S. Department of Defense, invoicing expenditures, preparing and distributing financial reports, updating the UKDPO SharePoint website, and maintaining the data files on the FMS Finance Shared Drive.

18. Plaintiff's duties were not governmental in nature, and she had no diplomatic duties. She had

no discretion or control over the data she exchanged or any contracting decisions. Her contact with the U.S. government was limited to exchanging routine contracting data with secretarial staff who held positions similar to her own.

*Plaintiff requested FMLA leave to care for her mother.*

19. In May 2008, Plaintiff's mother was diagnosed with Alzheimer's disease.

20. Because Plaintiff's other immediate family members were deceased, Plaintiff became her mother's primary care taker. Plaintiff's mother lives with Plaintiff and her husband.

21. On August 26, 2013, Plaintiff's mother suffered a significant seizure, which rendered her bedridden and non-communicative. Due to the seizure, Plaintiff's mother is completely incapacitated and unable to walk or move herself. Plaintiff and her husband share the responsibility for taking care of Plaintiff's mother, including managing her hygiene, feeding her, monitoring her well-being through prescription changes, and adjusting her position to prevent bedsores.

22. On October 18, 2013, Plaintiff requested FMLA leave to care for her mother.

23. Plaintiff was eligible for leave under the FMLA and the DCFMLA because she was employed by Defendant for more than the previous 12 months and had worked at least 1,250 hours during the preceding12-month period. Further, Plaintiff worked at Defendant's worksite with 50 or more other employees.

24. Plaintiff followed Defendant's FMLA request procedures and completed all requested FMLA paperwork, including U.S. Department of Labor form WH-382. Specifically, she requested to take periodic unscheduled leave, as required to care for her mother.

25. Defendant approved Plaintiff's request on or about October 31, 2013.

26. Plaintiff began taking FMLA leave shortly thereafter, during which she used her accrued sick

leave and annual leave, per Defendant's requirement.

*Defendant interfered with Plaintiff's FMLA leave.*

27. Although Defendant granted Plaintiff's request for FMLA leave, Defendant did not actually allow Plaintiff to take leave.

28. Whenever Plaintiff took approved FMLA leave, her supervisor, Alexandra Knowles, assigned Plaintiff work as if she were telecommuting.

29. Although Defendant had already approved her request for intermittent FMLA leave, Plaintiff's supervisors regularly questioned and challenged her need to take leave.

30. On several occasions, Plaintiff's second-line manager Lee Toman, demanded to see photographic evidence of Plaintiff's mother's illness.

*Defendant retaliated against Plaintiff for taking FMLA leave.*

31. Shortly thereafter, in May 2014, Plaintiff received a negative performance appraisal that falsely criticized her work.

32. Plaintiff had always received at least satisfactory performance ratings, and her supervisors had never before indicated that her work was deficient.

33. On March 3, 2015, after another falsely negative performance appraisal Knowles placed Plaintiff on a performance improvement plan ("PIP"). The PIP outlined eight "areas of development" and contained an exhaustive list of increased job duties and multiple "immoveable" deadlines. The PIP unfairly blamed Plaintiff for mistakes that Knowles made.

34. The PIP was set to last ninety (90) days, concluding on May 29, 2015.

35. On March 4, 2015, Plaintiff reported to Lauren Parenne in Human Resources ("HR") that Knowles continued to harass and bully her about her FMLA leave. Plaintiff indicated that the PIP was evidence of the harassment.

36. At approximately 5:00 p.m. on March 6, 2015, Loudoun County Sheriff's Deputy Michael Gessner arrived at Plaintiff's home. He stated that he was responding to Defendant's report of concern for Plaintiff's "well-being." Plaintiff assured Deputy Gessner that she was well, and he left.

37. On March 9, 2015, Plaintiff worked from home. At approximately 5:30 p.m., law enforcement, Department of Social Services employees, and EMTs arrived at Plaintiff's home. Apparently, Defendant falsely reported that Plaintiff was starving her mother to death.

38. The EMTs took Plaintiff's mother to INOVA Hospital. She was released that same evening because it was clear that she was not malnourished or otherwise mistreated.

39. Defendant's insulting false allegations and the sudden appearance of law enforcement, Social Services, and EMTs at her home was humiliating, distressing, and frightening to Plaintiff.

40. Later that evening, Plaintiff called Knowles regarding the intimidating and unnecessary intrusion caused by Defendant's false report.

*Defendant terminated Plaintiff's employment based on false allegations.*

41. On March 11, 2015, Plaintiff spoke with HR employee Nancy Griffith on the phone. Griffith told Plaintiff that her employment was terminated due to an alleged "HIPAA violation." Griffith did not provide any details about the allegation, and Plaintiff does not recall ever disclosing any protected health information.

42. Griffith told Plaintiff not to ask questions and to avoid trying to "talk her way out of this" because the decision was final. At the end of the conversation, Griffith muttered, "You just use your mother's condition as an excuse."

43. Shortly after Griffith's phone call, Plaintiff received a letter from Peter Goodwin, Civil Secretary, British Defense Staff. The letter stated: "It has come to our attention that there has

been a pattern of inappropriate and unacceptable behavior and conduct that that [sic] impacts both your ability to interact on a professional level with your co-workers as well as impacts the ability for you to maintain your security clearance with the Embassy." No details were provided about the alleged "inappropriate and unacceptable behavior;" nor did Goodwin reference a "HIPAA violation."

## COUNT 1
*(Violation of FMLA – Interference)*

44. Plaintiff repeats and realleges paragraphs 1–43, as if fully set forth herein.

45. Defendant interfered with Plaintiff's FMLA rights by requiring her to work while on approved FMLA leave.

46. By and through its conduct, Defendant violated the FMLA.

47. Defendant's actions were willful, malicious, and with conscious disregard or reckless indifference to Plaintiff's rights.

48. As a result, Plaintiff sustained damages, including lost wages and benefits and liquidated damages.

## COUNT 2
*(Violation of FMLA – Retaliation)*

49. Plaintiff repeats and realleges paragraphs 1–48, as if fully set forth herein.

50. Defendant retaliated against Plaintiff for exercising her FMLA rights by unfairly criticizing her performance, making false reports about Plaintiff to law enforcement and other government agencies, and terminating her employment.

51. By and through its conduct, Defendant violated the FMLA.

52. Defendant's actions were willful, malicious, and with conscious disregard or reckless indifference to Plaintiff's rights.

53. As a result, Plaintiff sustained damages, including lost wages and benefits and liquidated damages.

## COUNT 3

*(Violation of DCFMLA – Interference)*

54. Plaintiff repeats and realleges paragraphs 1–53, as if fully set forth herein.

55. Defendant interfered with Plaintiff's DCFMLA rights by requiring her to work while on approved DCFMLA leave.

56. By and through its conduct, Defendant violated the DCFMLA.

57. Defendant's actions were willful, malicious, and with conscious disregard or reckless indifference to Plaintiff's rights.

58. As a result, Plaintiff sustained damages, including lost wages and benefits and liquidated damages.

## COUNT 4

*(Violation of DCFMLA – Retaliation)*

59. Plaintiff repeats and realleges paragraphs 1–58, as if fully set forth herein.

60. Defendant retaliated against Plaintiff for exercising her DCFMLA rights by unfairly criticizing her performance, making false reports about Plaintiff to law enforcement and other government agencies, and terminating her employment.

61. By and through its conduct, Defendant violated the DCFMLA.

62. Defendant's actions were willful, malicious, and with conscious disregard or reckless indifference to Plaintiff's rights.

63. As a result, Plaintiff sustained damages, including lost wages and benefits and liquidated damages.

## COUNT 5

*(DCHRA Violation – Age Discrimination)*

64. Plaintiff repeats and realleges paragraphs 1–63, as if fully set forth herein.

65. Defendant discriminated against Plaintiff on the basis of age by unfairly criticizing her performance, making false reports about Plaintiff to law enforcement and other government

agencies, and terminating her employment.

66. By and through its conduct, Defendant violated the DCHRA.

67. Defendant's actions were willful, malicious, and with conscious disregard or reckless indifference to Plaintiff's rights.

68. As a result, Plaintiff sustained damages, including lost wages and benefits, emotional distress, humiliation, and pain and suffering.

## COUNT 6

*(DCHRA Violation: Discrimination based on Association with a Person with a Disability)*

69. Plaintiff repeats and realleges paragraphs 1–68, as if fully set forth herein.

70. Defendant discriminated against Plaintiff on the basis of her association with a person with a disability by unfairly criticizing her performance, making false reports about Plaintiff to law enforcement and other government agencies, and terminating her employment.

71. By and through its conduct, Defendant violated the DCHRA.

72. Defendant's actions were willful, malicious, and with conscious disregard or reckless indifference to Plaintiff's rights.

73. As a result, Plaintiff sustained damages, including lost wages and benefits, emotional distress, humiliation, and pain and suffering.

## COUNT 7

*(DCHRA Violation – Discrimination based on Family Responsibilities)*

74. Plaintiff repeats and realleges paragraphs 1–74, as if fully set forth herein.

75. Defendant discriminated against Plaintiff on the basis of her family responsibilities by unfairly criticizing her performance, making false reports about Plaintiff to law enforcement and other government agencies, and terminating her employment.

76. By and through its conduct, Defendant violated the DCHRA.

77. Defendant's actions were willful, malicious, and with conscious disregard or reckless indifference to Plaintiff's rights.

78. As a result, Plaintiff sustained damages, including lost wages and benefits, emotional distress, humiliation, and pain and suffering.

## COUNT 8

*(Intentional Infliction of Emotional Distress)*

79. Plaintiff repeats and realleges paragraphs 1–78, as if fully set forth herein.

80. Defendant engaged in conduct that was extreme and outrageous by making false reports about Plaintiff to law enforcement and other government agencies.

81. Defendant acted with the intent to cause Plaintiff emotional distress or with reckless disregard as to whether its conduct would cause Plaintiff to suffer emotional distress.

82. As a result, Plaintiff suffered damages, including emotional distress, humiliation, and pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant on all Counts; reinstate Plaintiff's employment; and award damages of $3 million or such other amount as is determined at trial consisting of compensatory damages; lost wages and benefits; liquidated damages; punitive damages; attorneys' fees and costs; an amount equal to the tax on any award, interest, and costs; and award such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

Date:  February 16, 2017                                        Respectfully submitted,

Alan Lescht & Associates, P.C.

By:     /s/ Alan Lescht        

Alan Lescht (#441691)
August Johannsen (#1021201)
1050 17th St., NW, Suite 400
Washington, D.C. 20036
Tel:  (202) 463-6036
Fax:  (202) 463-6067
alan.lescht@leschtlaw.com
august.johannsen@leschtlaw.com
*Attorney for Plaintiff*