UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELAGH PAYNE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:17-cv-00297 (APM) |
| BRITISH EMBASSY, WASHINGTON D.C., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I.

Plaintiff Shelagh Payne is a former employee of Defendant British Embassy, Washington, D.C., where she served most recently as a Trade FMS Finance Officer. Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 14–15. Following her termination in 2015, *id.* ¶ 41, Plaintiff filed this Complaint, alleging violations of: (1) the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); (2) the DC Family and Medical Leave Act, D.C. Code §§ 32-401 *et seq.* ("DCFMLA"); (3) the District of Columbia Human Rights Act, D.C Code §§ 2–1401 *et seq.* ("DCHRA"); as well as (4) intentional infliction of emotional distress, *see generally* Compl. Plaintiff contends that Defendant placed her on a performance improvement plan ("PIP"), *id.* ¶ 33; falsely reported to the police that she was "starving her mother to death," *id.* ¶¶ 36–37; and terminated her, *id.* ¶ 41, because of her age and in retaliation for exercising her right to take FMLA leave to care for her mother.

The court now considers Defendant's Motion for Summary Judgment. Six claims remain: (1) interference with Plaintiff's FMLA and DCFMLA rights (Count I, Count III); (2) retaliation

against Plaintiff for exercising her FMLA and DCFMLA rights (Count II, Count IV); (3) age discrimination under the DCHRA (Count V); and (4) discrimination against Plaintiff based on her family responsibilities under the DCHRA (Count VII).[1]

The court finds that there is no genuine dispute of material fact as to Plaintiff's age discrimination claim and therefore grants summary judgment as to Count V. However, as to the remaining claims, there remains a genuine dispute of material fact. Accordingly, Defendant's Motion is denied as to all other counts.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015). In assessing a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Defendant makes much of Plaintiff's failure to cite to her Declaration in her original Statement of Disputed Material Facts, Pl.'s Opp'n Mem., ECF No. 28 [hereinafter Pl.'s Opp'n]; Pl.'s Stmt. Disputed Material Facts, ECF No. 28-1 [hereinafter Pl.'s Stmt.]. *See generally* Def.'s Opp'n to Pl.'s Mot. for Leave, ECF No. 33 [hereinafter Def.'s Opp'n to Leave]. To be sure, to

---

[1] Following a meet and confer by the parties, the court granted Defendant's Partial Motion to Dismiss Complaint, ECF No. 4, and Motion to Strike Plaintiff's Jury Demand and Punitive Damages Claim, ECF No. 5, thereby dismissing Plaintiff's Count VIII alleging intentional infliction of emotional distress, as well as striking her request for a jury trial and prayer for punitive damages. *See* Minute Order, July 13, 2017. Additionally, in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, *see* Pl.'s Opp'n Mem., ECF No. 28, Plaintiff consents to dismissal of her Count VI alleging discrimination based on association with a person with a disability under the DCHRA, *see id.* at 26 n.10. Accordingly, six of the original eight counts remain.

defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials," and its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015) (citing Fed. R. Civ. P. 56(e)). However, Defendant asks the court to ignore Plaintiff's Declaration merely because Plaintiff's original Statement does not specifically cite to it—even though the Declaration as the source of Plaintiff's fact assertions is evident. *See* Def.'s Opp'n to Leave at 5; *see also* Pl.'s Stmt. at 1 (stating that "[a]ll facts not cited to are supported by [Plaintiff]'s affidavit, attached hereto as Exhibit 1"). The court declines to do so. Plaintiff would have done better to cite specifically to her Declaration in the first instance, but the court will consider it nonetheless. *See* Fed. R. Civ. P. 56(c)(3).

III.

A.

The court first disposes of Plaintiff's age discrimination claim under the DCHRA. District of Columbia courts "look[ ] to federal court decisions interpreting the federal Age Discrimination in Employment Act of 1967 [('ADEA')] when evaluating age discrimination claims under the DCHRA." *Washington Convention Ctr. Auth. v. Johnson,* 953 A.2d 1064, 1073 n.7 (D.C. 2008). The D.C. Court of Appeals has yet to determine whether, in proving a DCHRA age discrimination claim, a plaintiff must merely show that her age "had a determinative influence on the" challenged employment action, *id.* at 1073 (internal citation and quotation marks omitted), or she must prove the more rigorous "but-for" causation standard for ADEA cases established by later Supreme Court precedent, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–77 (2009); *see also Schuler v.*

3

*PricewaterhouseCoopers, LLP*, 595 F.3d 370, 376 (D.C. Cir. 2010). But, no matter—under either standard, Plaintiff's claim fails.

Plaintiff offers no proof connecting her age and the only adverse decision that she claims resulted from discrimination—her termination. *See* Pl.'s Opp'n at 29–30.[2] The sole evidence on which Plaintiff relies to show "discriminatory animus" is that, on some unidentified date in 2014, one of her supervisors "stated that Ms. Payne 'was showing her age' because Ms. Payne was unfamiliar with social media and Skype." Pl.'s Stmt. ¶ 119. But that evidence, standing alone, establishes no causality. The statement's temporal proximity to the termination is uncertain and the supervisor who made the statement is not identified as involved in the firing in any way. Plaintiff adds that she was terminated "only a couple of years prior to when she was eligible for full retirement benefits," Pl.'s Opp'n at 29, but she produces no evidence that this consideration played any role in the decision to fire her. Because Plaintiff has not offered evidence sufficient to show that her age was either the but-for cause or a "determinative influence" in her termination, her age discrimination claim cannot survive. The court therefore grants Defendant's Motion for Summary Judgment on Count V.

B.

As to the remainder of Plaintiff's claims, there are genuine disputes of material fact that preclude the court from granting Defendant's Motion.

Starting with Plaintiff's interference claims under the FMLA and DCFMLA, Plaintiff must show that: (1) she was entitled to take leave because she or a family member had a serious health condition; (2) she provided Defendant with adequate notice of her intention to take leave; and

---

[2] Although Plaintiff's Complaint states that "Defendant discriminated against Plaintiff on the basis of age by unfairly criticizing her performance, making false reports about Plaintiff to law enforcement and other government agencies, and terminating her employment," Compl. ¶ 65, Plaintiff's Opposition relies only on her termination, so the court only focuses only on this adverse action.

4

(3) Defendant interfered with her right to take leave. *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 65 (D.D.C. 2011); *see* 29 U.S.C. §§ 2611, 2612, 2615; D.C. Code §§ 32-507(a)–(b). Here, Defendant only contests Plaintiff's ability to establish the last of these elements. *See* Def.'s Mot. for Summ. J., ECF No. 24 [hereinafter Def.'s Mot.]; Def.'s Mem., ECF 24-7 [hereinafter Def.'s Mem.], at 4–5.

There is record evidence, when viewed in the light most favorable to Plaintiff, to support the third element of Plaintiff's interference claims. Plaintiff points to several documents in which supervisors at different levels questioned her absences from work and need to take leave. *See, e.g.*, Pl.'s Opp'n, Ex. 3, ECF No. 28-5, at 288[3] (Supervisor Alex Knowles stating that Plaintiff was expected to be in the office on Wednesday that week, instead of working from home); *see also id.* at 438 (Supervisor Knowles stating that Plaintiff was out of annual and sick leave and Knowles "would like to go down the more formal route. If this results in an issue of a warning[, supervisor] would like to be clear on what subject the warning is to be issued to ensure it marries with potential actions that may be taken at a later date."). Plaintiff's Declaration provides further support for her contention. *See* Pl.'s Opp'n, Ex. 1, ECF No. 28-3 [hereinafter Pl.'s Decl.], ¶ 33 (stating that Supervisor Knowles "would instant message and talk on the phone with [her] throughout the days [she] was on FMLA leave about work issues").[4] And then there is the fact that Plaintiff's use of FMLA leave is mentioned in her performance reviews, despite Defendant's explicit policy against

---

[3] The court refers to the bates numbering of Plaintiff's exhibits.
[4] Throughout its brief, Defendant contends that Plaintiff has not satisfied her initial burden because she relies on no more than her own "bald allegation" and "conclusory" testimony as proof. *See, e.g.,* Def.'s Mem at 6–7. But the "self-serving" nature of Plaintiff's testimony does not necessarily invalidate its evidentiary value. "[E]vidence a party proffers in support of its cause will usually, in some sense, be 'self-serving.'" *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016). Such testimony is to be disregarded only if it "is so undermined as to be incredible." *Chenari v. George Washington Univ.*, 847 F.3d 740, 747 (D.C. Cir. 2017) (citation omitted). This is most likely where testimony has been undermined "either by other credible evidence, physical impossibility[,] or other persuasive evidence that the [affiant] has deliberately committed perjury." *Id*. (citation omitted). Defendant has not produced evidence that would make the facts attested to by Plaintiff "incredible," so there is no basis for the court to disregard her statements.

5

such commentary. *See* Pl.'s Opp'n, Ex. 3, ECF No. 28-6, at 776 (stating that "[Plaintiff] has alluded to ongoing domestic issues that have the potential to continue; however, she has shown great resilience in dealing with such issues"); *see also* Pl.'s Stmt. ¶ 30 (citing Pl.'s Opp'n, Ex. 3, ECF No. 28-6, at 717 for 2013/2014 Staff Appraisal Guide, which instructs reviewers to "[c]heck that the appraisal does not contain remarks about an officer's [family] commitments").

Discouraging Plaintiff from taking leave or requiring her to work during the time she was meant to be on FMLA leave could constitute "interference." *See Williams v. Verizon Washington, D.C. Inc.*, 304 F. Supp. 3d 183, 189 (D.D.C. 2018) (stating that "discouraging an employee from using [FMLA] leave" may constitute interference). The record, therefore, contains a genuine material dispute of fact as to whether Defendant's conduct interfered with Plaintiff's leave.

C.

In order to establish retaliation under the FMLA and DCFMLA, a plaintiff must prove that the employee (1) engaged in protected activity afforded by the statute; (2) suffered a materially adverse employment action; and (3) the protected activity and the adverse employment action were causally connected. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (federal FMLA); *see also Alford v. Providence Hosp.*, 945 F. Supp. 2d 98, 108 (D.D.C. 2013) (DCFMLA). Defendant contests the first and second elements. *See* Def.'s Mem. at 8–13.

Plaintiff claims that she suffered adverse actions as a result of her use of FMLA leave when Defendant (1) placed her on a PIP, (2) made false reports to social services and law enforcement that she intended to harm her mother, and (3) terminated her from her position. *See* Pl.'s Opp'n at 14–15. Defendant erroneously argues that the first two acts do not qualify as "materially adverse." Def.'s Mem. at 8.

With respect to the PIP, Defendant fails to recognize that courts in this jurisdiction routinely have found that "the imposition of a PIP—even one that does not result in a negative impact on salary, grade or performance appraisal—can constitute an adverse action" for retaliation claims. *See Crowley v. Vilsack*, 236 F. Supp. 3d 326, 331 (D.D.C. 2017) (listing cases). Moreover, Plaintiff asserts that she lost out on a performance bonus due to the PIP. *See* Pl.'s Opp'n at 15. Thus, even under Defendant's preferred definition of adversity, which would require some effect on the terms or conditions of employment, the PIP qualifies as an adverse action.

As for sending social services and law enforcement to Plaintiff's home, the Supreme Court has recognized that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 63 (2006). So long as the action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," it qualifies as adverse for purposes of a retaliation claim. *Id.* at 68 (internal quotations marks omitted). Here, sending adult protective services to an employee's home is surely the kind of act, if done with a retaliatory motive, that would discourage a worker from making a charge of discrimination. It therefore could constitute a material adverse action.

With regard to the third element of causation, Defendant argues that it had legitimate, non-retaliatory reasons for each of the adverse actions asserted by Plaintiff. The question for the court at the summary judgment stage is: "Has [Plaintiff] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the [Plaintiff]?" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). She has.

With regard to the PIP, the same evidence that supports Plaintiff's claim of interference is also evidence of pretext for the PIP. *See supra.* Additionally, Plaintiff consistently received positive performance appraisals before being placed on the PIP. *See, e.g.*, Pl.'s Opp'n, Ex. 3, ECF No. 28-6, at 770, 777. If Defendant interfered with her FMLA leave, then it is reasonable to believe that Defendant also placed her on a PIP for taking leave.

As for calling social services and terminating Plaintiff, Defendant says that it took those actions "because it received numerous reports that [Plaintiff] made alarming comments concerning her mother, and showed numerous coworkers private pictures of her mother's body, and those comments precluded her from maintaining her security clearance." Def.'s Mem. at 11. But Plaintiff refutes this version of events. She claims that she made the comments about her mother as a result of the pressure she was receiving not to take FMLA leave, and she disputes the precise words attributed to her. *See* Pl.'s Stmt. ¶¶ 88–93. She also attests that she showed the photos of her mother only when called upon by a supervisor to provide proof of her mother's impairment. *See id.* ¶ 111. Thus, the events giving rise to the call to protective services and her termination are in dispute.

Further evidence of pretext exists for Plaintiff's termination: the record reflects shifting explanations for that decision. *See Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (stating that "shifting and inconsistent justifications are probative of pretext" (internal quotation marks omitted)). One of the reasons given at the time for Plaintiff's termination was that she asked her supervisor, Ms. Knowles, to borrow money, *see* Pl.'s Opp'n, Ex. 3, ECF No. 28-5, at 518, but the email documenting the conversation during which Plaintiff allegedly made this request makes no mention of it, *see* Pl.'s Opp'n, Ex. 3, ECF No. 28-6, at 227. Also, Plaintiff states that she was told that she was being terminated "due to a HIP[AA] violation" and that she had "used [her] mother

8

as an excuse." Pl.'s Decl. ¶ 72; *see also* Def.'s Reply, ECF No. 30, Def.'s Response to Pl.'s Stmt., ECF No. 30-3, ¶ 98 (not disputing). A reasonable trier of fact could view these shifting explanations as a pretext for retaliation.

Defendant asserts that Plaintiff cannot defeat summary judgment merely by disputing the accuracy of her conduct. Instead, she must show that Defendant could not have honestly and reasonably believed the reasons for her termination, and Plaintiff has presented no evidence that the final decision-makers knew about Plaintiff's leave history and the issues surrounding it. That is a correct statement of the law. *See Brady*, 520 F.3d at 495 ("The question is not whether the underlying [incident warranting termination] occurred; rather, the issue is whether the employer honestly and reasonably believed that the underlying [incident warranting termination] occurred.") (citations omitted). But it is also true that "[t]he actions of a discriminatory supervisor that feed into and causally influence the decisionmaker's ultimate determination may also be the proximate cause of an adverse employment action." *Steele v. Mattis*, 899 F.3d 943, 950 (D.C. Cir. 2018). That principle applies here.

The same persons involved in reporting Plaintiff's alleged inappropriate behavior are those who Plaintiff has asserted were hostile to her FMLA leave and family responsibilities. Robert Bayliss reported on March 5, 2015, that Plaintiff stated "she had been making plans to kill her mother to save her job including making arrangements for her funeral," Def.'s Stmt. of Undisputed Material Facts, ECF No. 24-1 [hereinafter Def.'s Stmt.], ¶ 113 (citing Def.'s Mot, Ex. 3, ECF No. 24-4 [hereinafter Griffith Decl.] ¶ 5 and Ex. A to Griffith Decl.); yet, Plaintiff reported Bayliss to HR shortly after being granted FMLA leave, because she felt he was retaliating against her for taking leave, *see* Pl.'s Decl. ¶ 13. Similarly, Lauren Perini (Assistant Human Resources Director) reported on March 6, 2015, that Plaintiff "had remarked that rather than take FMLA leave, she

9

should have just not fed her mother and let her mother starve to death," Def.'s Stmt. ¶ 120 (citing Griffith Decl. ¶ 7); but, Perini had not only been involved in issuing Plaintiff's PIP, but had also made statements about needing "to have some tough conversations" with Plaintiff about her use of leave, Pl.'s Stmt. ¶ 27; *see also* Pl.'s Opp'n, Ex. 3, ECF No. 28-5, at 337, 340. Relatedly, there is evidence that the two people to whom Plaintiff showed photographs of her mother—Alex Knowles and Robert Bayliss—were hostile to Plaintiff taking leave. Def.'s Stmt. ¶¶ 114–19. Thus, even though the final decision-makers might not have known about Plaintiff's leave history and the issues surrounding it, there remains a genuine dispute of material fact about the motives of those who reported Plaintiff's alleged concerning conduct to the decision makers. Summary judgment as to Plaintiff's retaliation claims is therefore not appropriate.

D.

The court also denies Defendant's Motion as to Plaintiff's claim of discrimination based on her family responsibilities. To make out such a claim, a plaintiff must offer facts sufficient to show that "(1) she is a member of a protected class, (2) she suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination, that is, an inference that her employer took the action because of her membership in a protected class." *Miles v. Univ. of D.C.*, No. 12–378 (RBW), 2013 WL 5817657, at *13 (D.D.C. Oct. 30, 2013) (quoting *Brown v. District of Columbia*, 919 F. Supp. 2d 105, 115 (D.D.C. 2013)). When the record is considered in its entirety, there is evidence from which a reasonable trier of fact could conclude that Defendant's actions towards Plaintiff were motivated by her increasing need to care for her mother. *See, e.g.*, Pl.'s Opp'n, Ex. 3, ECF No. 28-6, at 771 (March 2013 Performance Appraisal in which Plaintiff's rating officer stated: "I do agree with the line manager's view that this has been a very challenging year from a domestic perspective. This has had a negative impact on her attendance.").

IV.

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment as to Count V for age discrimination and denies the Motion as to all other remaining counts. The court also grants Plaintiff's Motion for Leave to File Amended Statement of Disputed Material Facts and Amended Response to Defendant's Statement of Facts, ECF No. 33.

Dated: May 23, 2019

Amit P. Mehta
United States District Court Judge